# CASES

# SUPREME JUDICIAL COURT

---

## GALVIN *plff. in equity vs.* SHAW *& al.*

Where a preliminary hearing was had before one Judge in vacation, on an application for an injunction, and objection was taken to the jurisdiction of the Court, which was overruled; it was held that the defendant was not thereby precluded from taking the same objection when called before the whole Court by bill.

Where one erected dams on certain lakes and streams, thereby diverting or keeping back the waters to which the plaintiff in equity claimed to have a legal right for his mills below such erections, it was held not to be a case of "fraud" within the meaning of the *stat.* of 1830, *ch.* 462, extending the equity powers of this Court.

THIS was a bill in equity, in which the plaintiff set forth that he was the owner of a township of timber land situated in this County, and known by the name of the Tallmadge township, on which he also had certain mills ; and that he was entitled to the free course and use of a certain stream running through said township and by said mills, known by the name of the Eastern Branch of the Musquash Stream, for the purpose of propelling his mills and for the floating of logs to them. The same allegations were also made as to certain other streams which were tributary to the Eastern Branch. But the defendants, it was alleged, well knowing the premises, but maliciously and fraudulently contriving to injure the plaintiff, and to lessen the value of his said land and mills and to deprive him of the beneficial and profitable use of them, and to prevent him from floating and driving his logs down

to his mills, went above said mills at the outlet of a certain lake which emptied its waters into the Eastern Branch Stream, and there erected certain dams whereby the passage of the waters to said stream were wholly obstructed, and by said defendants were unreasonably, maliciously, and fraudulently detained in the said lake ; whereby the plaintiff was greatly injured, the injuries being specially set forth and described. The bill closed with a prayer that the defendants might be enjoined from keeping the gates in their said dams closed and thus detaining the waters of the lake. — That the Court would decree that the said dams be abated and removed, and for such further relief in the premises as to equity and justice might appertain.

The defendants demurred specially to the plaintiffs' bill, assigning for cause a want of jurisdiction in the Court.

It seemed that a preliminary hearing had been had before one Judge in vacation, on an application for an injunction, at which objection was taken to the jurisdiction of the Court, which was overruled.

*Chase*, for the defendant, argued in support of positions which were sustained by the decision of the Court, citing the following authorities: *Maine Stat. ch.* 462, § 2 ; *Dwight* v. *Pomeroy*, 17 *Mass.* 303 ; *Terrill* v. *Merrill*, 17 *Mass.* 117 ; *Frost* v. *Butler*, 7 *Greenl.* 231 ; *Given* v. *Simpson*, 5 *Greenl.* 303 ; *French* v. *Sturdivant*, 8 *Greenl.* 246 ; *Pratt* v. *Bacon*, 10 *Pick.* 126.

*Mellen* and *J. Granger*, for the plaintiff.

The demurrer comes too late. There was a demurrer *ore tenus* before one Judge in vacation, which was overruled, and the defendant proceeded to answer. He is therefore precluded from putting in a demurrer here.

This Court has jurisdiction in the case. Where terms of legal import are used in a statute they are to be construed according to their legal interpretation or definition. Nuisances are classed under the head of *fraud.* The allegation in the bill is fraud, and that is admitted by the demurrer.

The 2d. section of the statute does not confine the power of granting injunctions to cases arising under the 1st. section. But that under the second section, is a newly created, superadded

power, in no way dependent upon the 1st. section. This bill would also lie under the term *waste.* The term in this statute being used in its technical sense. *Angell on Water Courses,* 176, 178, (last ed.) 2 *Mad.* 284.

Weston C. J. — The defendants have demurred specially to the plaintiff's bill, assigning for cause, a want of jurisdiction in the court. It is urged, that this point is not open to the defendants, as the same objection was, it is said, made and overruled, at a hearing before one of the Judges of this Court in the vacation. That was a preliminary inquiry on an application for an injunction; and does not preclude the defendants from taking any ground in defence, which might be otherwise proper, when called upon in court.

Chancery powers have not been much favored or extended in the State of *Massachusetts,* of which, until recently, we formed a part. They were limited originally to cases of mortgage, and to bonds with condition. It was then extended by statute to cases of trust, arising under deeds, wills, or in the settlements of estates, and to cases, where a party claims the specific performance of a contract in writing. Thus it stood at the period of our separation. In *Dwight* v. *Pomeroy et als.* 17 *Mass.* 303, the opinion of the court was, that the authority given was intended to be limited to the subjects, expressly mentioned in the statute. Since that period the Supreme Judicial Court in *Massachusetts* have been clothed with chancery powers, in disputes between partners, joint tenants and tenants in common, and also in cases of nuisance. In *Pratt* v. *Bacon et al.* 10 *Pick.* 122, the court say, "it has often been decided, that the court does not take equity jurisdiction, except where it is given by statute, either in express terms or by necessary implication; and that it will not be assumed by analogy, or equity of construction." This court has used language to the same effect, in *Given et ux.* v. *Simpson et al.* 5 *Greenl.* 303.

By the statute of 1830, *ch.* 462, the equity powers of this court were much enlarged, so as to embrace cases of fraud, trust, accident or mistake. These terms, it is insisted, cover the whole field of equity jurisdiction, without any limitation whatever.

These are undoubtedly the principal sources of chancery powers; mistake, however, being usually understood to belong to the more general head of accident. *Baron Comyns*, treating of the equity powers of the court of chancery, states that it has jurisdiction properly in three cases, fraud, accident and trust. 2 *Com. Dig. Chan. ch.* 2. And he further states, that these are the cases principally, in which equity will give relief. *Ibid, Chancery*, 3 *F.* 1. *Maddock*, in his treatise, says the generality of the older writers describe the equity jurisdiction of the Chancellor under three heads, fraud, trust, and accident. To this classification, he adds three other heads, account, infants, and the specific performance of agreements, stating, however, that even under all these heads, it may not be very obvious, how the great multiplicity of doctrines, arising out of the equity jurisdiction, can be included. 1 *Mad.* 21.

Notwithstanding the classification, which may have been adopted, in discussing chancery powers, and however arbitrarily general terms may have been extended, by equity jurists in the English practice, considering the reluctance with which these powers have been granted by the legislative department, and the policy of the courts, not to enlarge them by analogy or construction, we are of opinion that the terms, used in the statute of 1830, before cited, cannot be extended beyond the fair and just meaning of these expressions in our language and practice. Since the passage of the statute, in *Frost* v. *Butler*, 7 *Greenl.* 225, and in *French* v. *Sturdivant*, 8 *Greenl.* 246, the chancery powers thereby conferred, are not considered as general, but limited and specific.

The acts, complained of in the bill, are the erection of two dams, to the annoyance of the plaintiff's mills. The court of Chancery in *England*, exercise jurisdiction in cases of nuisance. And it is there arranged under the general head of fraud. 1 *Maddock*, 128. It might as well have embraced trespass or trover, or any other tortious act, by which another is injured. Fraud consists in artifice, trick, cunning, deception, or any unfair dealing, by which another is cheated. We perceive nothing in the erection of these dams, which partakes of that character. They were openly erected. There could have been no concealment or

artifice in the case. The defendants are answerable at law to the plaintiffs, if they have acted without right. Giving these acts the appellation of fraudulent in the bill, or charging them as done with a fraudulent design, does not change their character. We are very clear that they cannot be regarded as acts of fraud, within the intent and meaning of the statute under consideration.

Injunctions may be granted, by the second section of the statute, to prevent injustice; but this must be exercised in furtherance of the jurisdiction conferred. It must be limited to cases in which it belongs to the Court, in the discharge of its equity powers, to determine the rights of suitors, and to repress the injustice which would violate them. In other cases, rights are to be vindicated and wrongs suppressed, by the remedies afforded in the ordinary administration of justice. Having determined that the gravamen set forth in the bill, is not of equity jurisdiction, according to our laws, we leave the whole subject to the common law courts, which are clothed with ample power to do justice between the parties. The opinion of the court is, that the bill does not set forth a case within the jurisdiction of the Court; and it is accordingly dismissed.